UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD CECIL WALKER, | : | CIVIL NO. 4:15-CV-0887 |
| | : | |
| Petitioner, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| CRAIG A. LOWE et al., | : | |
| | : | |
| Respondents. | : | |

## MEMORANDUM OPINION

October 17, 2016

## I.  DISCUSSION

1.    BACKGROUND

Petitioner, Edward Cecil Walker, hereinafter "Walker," is awaiting a final

order of removal from the United States.  Petitioner filed a writ of habeas corpus

on May 6, 2015 requesting release from United States Department of Homeland

Security, Immigrations and Customs Enforcement ("ICE") incarceration. Petitioner

was held at the Pike County, Pennsylvania Correctional Facility.  Craig A. Lowe is

the warden of that institution.

Based on testimony at a bond hearing, conducted July 28, 2016, I

determined that continued detention was unnecessary as Walker is neither a flight risk, nor a danger to the community; I concluded that due process considerations necessitated his release. Walker was then released from the custody of Respondents on August 9, 2016. Pursuant to the Equal Access to Justice Act, hereinafter "EAJA," Walker's counsel moved for attorney's fees.[1]

To fully understand whether or not attorney's fees and costs should be paid by Respondents, the reader must appreciate the history of Walker's petition for writ of habeas corpus. Walker is a native of Ghana who was admitted legally to the United States in 2009 as a nonimmigrant student. In 2011, Walker married a United States citizen; he and his wife, Khadijah, have two children who are citizens of the United States.

In 2013, Walker plead guilty to Possession with Intent to Deliver, hereinafter "PWID," in the Court of Common Pleas of Berks County. Walker admitted possession of 187 grams of marijuana. He was sentenced to a term of time served.

On May 23, 2013, shortly after he was released from custody in Berks County, deportation proceedings were initiated. ICE detained Walker pursuant to the mandatory custody provision of 8 U.S.C. 1226(c) and 1227(a)(2)(A)(iii) having determined that Walker was convicted of an "aggravated felony." A final

---

[1]28 U.S.C. § 2412.

2

administrative removal order was issued on August 8, 2013.  Approximately one

year later, on August 27, 2014, the United States Court of Appeals for the Third

Circuit granted Walker's request for a stay of  removal to Ghana pending a

reasonable fear of persecution determination under 8 CFR §§ 208.31 and 1208.31.

On August 18, 2015, the Third Circuit vacated the final order of removal.

In doing so, it held that, using the modified categorical approach, the Pennsylvania

marijuana PWID conviction was not an aggravated felony within the meaning of

the immigration laws.  On October 15, 2015, an immigration judge ordered Walker

to be released on a $2,500 bond.  His family posted the bond and he was

subsequently released.  Walker was subsequently redetained by ICE  on December

14, 2015, after he and his wife were accused of stealing a television from a retail

store in the State of New York.

On June 7, 2016, after Walker had been in ICE custody for approximately

three (3) years, far in excess of his original Berks County criminal sentence, I

ordered the immigration judge to conduct an individualized bond hearing.  The

immigration judge did so, and ordered Walker's release on a $15,000 bond.

Walker's counsel moved for a hearing with this Court, as Walker did not have the

resources to post a $15,000 bond.  Pursuant to this Court's habeas corpus

jurisdiction, I held an individualized bond hearing on July 28, 2016.   I

subsequently determined, by Order dated August 1, 2016, that continued detention violated Walker's due process rights and directed that he be released from ICE custody.

2.    THE EQUAL ACCESS TO JUSTICE ACT

The EAJA states, in relevant part:

**(d)(1)(A)** Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

**(d)(2)** For the purposes of this subsection–

**(A)** "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.;

**(B)** "party" means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed [];

4

**(C)** "United States" includes any agency and any official of the United States acting in his or her official capacity;

**(D)** "position of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings.[2]

3.    WALKER'S COUNSEL IS ENTITLED TO ATTORNEY'S FEES AND COSTS

Determining whether or not the government's position is "substantially justified" is a fact specific analysis, and I hold that here, it was not.  The late Justice Antonin Scalia, writing on behalf of the majority in *Pierce v. Underwood* stated:  "the question whether the Government's litigating position has been "substantially justified" is precisely such a multifarious and novel question, little susceptible, for the time being at least, of useful generalization."[3]  "[B]ecause the number of possible situations is large, we are reluctant either to fix or sanction narrow guidelines for the district courts to follow."[4]  Moreover, Justice Scalia cautioned that "a "request for attorney's fees should not result in a second major litigation."[5]

---

[2] 28 U.S.C. § 2412.

[3] 487 U.S. 552, 562 (1988).

[4] *Id.* (internal citations omitted).

[5] *Id.*

5

"Substantially justified" means "justified to a degree that could satisfy a reasonable person."[6] "The burden of demonstrating substantial justification for its position rests squarely on the government agency."[7] "The government must meet this threshold twice."[8]   "First, it must independently establish that the agency action giving rise to the litigation was substantially justified."[9] "Second, it must establish that its litigation positions were substantially justified."[10] "To be substantially justified, the government's position need not be "correct", or even "justified to a high degree.""[11] "Rather, the government must simply have a "reasonable basis in both law and fact" or be "justified in substance or in the main-that is, justified to a degree that could satisfy a reasonable person.""[12] "EAJA is a waiver of sovereign immunity, however, so it must be construed strictly in favor of the United States."[13]

---

[6]*Id.*

[7]*Hanover Potato Prod., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993).

[8]*Kiareldeen v. Ashcroft*, 273 F.3d 542, 545 (3d Cir. 2001).

[9]*Id.*

[10]*Id.*

[11]*Id.*  at 554, *citing Pierce, supra.*

[12]*Id.*

[13]*Clarke v. INS*, 904 F.2d 172, 175 (3d Cir.1990).

At the time Walker's petition was filed, he had been detained in immigration pre-removal custody for almost two years.[14]  The Government's position ceased to be substantially justified, either in law or fact, sometime after Walker had been incarcerated for more than six months.[15]  The Government was certainly on notice by April 9, 2015, when the Third Circuit decided in *Chavez-Alvarez* that one year of pre-removal detention violated due process rights when that alien's challenge raises "real issues."[16]  And, in any event, the Government was fully aware that its

---

[14]To be precise, he had been in custody for 714 days.

[15]*Demore v. Kim*, 538 U.S. 510, 518–19, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003).

[16]*Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015).   The Government makes much of the fact that Chavez-Alvarez was decided only a few month prior to Walker filing his petition, but that does not excuse its position.  *Demore* was decided twelve years prior to Walker's petition. The Government had time to digest the mandate of the United States Supreme Court in those twelve years.  Moreover, as Petitioner points out, other courts were able to quickly implement *Chavez-Alvarez*. *E.g. Singh v. Sabol*, No. 1:14-CV-1927, 2015 WL 3519075, at *3 (M.D. Pa. June 4, 2015), appeal dismissed (Sept. 9, 2015) (In prescribing this one-year time frame beyond which the presumption of detention is sufficiently eroded that an individualized bail consideration is necessary, the appellate court also defined what showing the Government must make in order to justify the continued detention of the petitioner. According to the court, the immigration statute "implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community."  *See also Phrance v. Johnson,* No. CIV.A. 14-7693 CCC, 2015 WL 2159834, at *3 (D.N.J. May 7, 2015) (A 19-month detention without justification is more than three times the six-month period that *Chavez-Alvarez* allows the Government to detain someone under § 1226(c) without justification, and certainly well over the one-year threshold when the presumption of validity becomes untenable.)

continued detention of Walker was not on firm ground by August 18, 2015 when the Third Circuit held that Walker's "conviction under Pennsylvania statute that proscribed 'the manufacture, delivery, or possession with intent to manufacture or deliver' of any amount of marijuana, even a small amount of drug for no remuneration, was not aggravated felony conviction, and did not render [the] alien ineligible for discretionary withholding of removal."[17]

4.   THE AMOUNT OF FEES TO BE ORDERED

The text of the EAJA mandates an hourly rate of "$125 per hour unless the court determines that an increase in the cost of living or a special factor."[18]  Neither party presented evidence as to what the "cost of living" adjustment should be for work performed in 2015 and 2016.

The late Honorable James F. McClure Jr., writing for this Court in 2010, found that with a habeas corpus matter, under the EAJA, "the statutory rate for attorney fees, adjusted for the cost of living, is $170.76 for work performed in 2009 and $174.72 for work performed in 2010."[19]   The Honorable David G. Larimer of the Western District of New York found that, in a request for fees in a

---

[17]*Walker v. Attorney Gen. U.S.*, 625 F. App'x 87 (3d Cir. 2015) (unpublished).

[18]28 U.S.C.§ 2412(d)(2)(A).

[19]*Elashi v. Sabol*, No. 4:09-CV-2201, 2010 WL 4536774, at *4 (M.D. Pa. Nov. 2, 2010).

social security matter under the EAJA, "$179.57 per hour for work performed in 2010, $185.04 per hour for 2011 and $193.15 per hour for 2014...adjusted for inflation, are reasonable."[20]

It is not clear what the cost of living increase should be per year.  However, looking to these cases, it appears to be around 3%.  Accordingly, if I extrapolate the statutory rate adjusted for cost of living set by Judge Larimer for 2014 by 3%, for 2015 the rate is $198.95 and for 2016 the rate is $204.92.

Considering this fee amount after an increase for cost of living adjustments, I  now must determine if a "special factor" justifies counsel's requested hourly rate of $250.00.  Walker's counsel, Daniel Conklin, Esquire, filed a Declaration as to his expertise.[21]   The Declaration reveals that Mr. Conklin is admitted to practice in the State of Michigan, the United States District Court for the Western District of Michigan, the United States District Court for the Middle District of Pennsylvania, the United States Court of Appeals for the Third Circuit, and the United States Supreme Court.[22]  Mr. Conklin stated that he possesses "specialized expertise in the immigration and detention issues raised by this case."[23]  He indicated that his

---

[20]*James v. Colvin*, 66 F. Supp. 3d 365, 367 (W.D.N.Y. 2014).

[21]ECF No. 40-4.

[22]*Id.* at 2.

[23]*Id.* at 2.

practice for the past six years has focused almost exclusively on removal defense.[24]

Additionally, Mr. Conklin has presented on immigration topics to other attorneys.  He wrote, "[i]n recognition of my immigration law expertise, I was asked to speak at the 2016 American Immigration Lawyer's Association's national conference on topics concerning the representation of detained noncitizens in removal proceedings."[25] Furthermore, he notes that he "was also recently asked to present on "Crimmigration" topics at the Pennsylvania Bar Institute's Immigration Seminar [in] September 2016."[26]  Mr. Conklin certified that he did not include in his fees motion what he deemed to be "excessive billing," such as client communication and clerical tasks.[27]

Petitioner also submitted the declaration of Joseph C. Hohenstein, Esquire, another immigration attorney.[28]  Mr. Hohenstein has practiced immigration law for the past twenty years and has been involved in more than 100 immigration

---

[24]*Id.* at 2.

[25]*Id.* at 2-3.

[26]*Id.* at 3.

[27]*Id.* at 2.

[28]ECF No. 40-5.

proceedings in federal court.[29]  He wrote that, "I am regularly asked by the

American Immigration Lawyers Association (AILA) to speak on immigration

litigation and so-called "crimmigration" matters."[30]  Mr. Hohenstein is familiar

with the work and expertise of Mr. Conklin.[31]   Mr. Hohenstein has provided

amicus support on behalf of the AILA to Mr. Conklin for a case that went before

the Third Circuit.[32]  Mr. Hohenstein went on to write:

> It is my opinion that Mr. Conklin possesses the distinct and specialized
> knowledge that was required for the successful resolution of this case.
>
> Edward Cecil Walker's case raises complex jurisdictional,
> "crimmigation" law, and detention issues.  Understanding the case's
> background required knowledge of a complex body of caselaw
> concerning doctrines for assessing the immigration consequences of
> convictions, the different administrative procedures the Department of
> Homeland Security (DHS) utilizes to issue removal orders, and the
> reasonableness of prolonged detention pending those administrative
> procedures.
>
> The vast majority of the immigration bar in the United States does not
> engage in federal court litigation, and of those that do, only a small
> number would be willing to take on a case of this complexity.  Moreover,
> there are no attorneys to my knowledge who would have undertaken
> such litigation at the EAJA statutory rate of $125 per hour, even adjusted
> for inflation.

---

[29]*Id.* at 2.

[30]*Id.* at 2.

[31]*Id.* at 2.

[32]*Id.*  at 2.

I am also familiar with the billing practices and rates of law firms in Pennsylvania. The $250 rate requested for Mr. Conklin is the prevailing market rate for attorneys of his experience and expertise. In fact, it is below my own rate of $450. Mr. Conklin is unique in that he as a high level of expertise even at an early stage of his career.

By way of example, more than ten years ago, when I handled an immigration related complaint in the Eastern District of Pennsylvania, I was awarded $300 per hour in a departure from the standard EAJA rate. *Harriott v. Ashcroft*, 277 F. Supp.2d 538, 545-46 (E.D. Pa. 2003). My current hourly rate would be $450.[33]

In opposition to the requested $250 rate, the Government argues merely that "[p]etitioner has not met his burden of showing that this case falls into the exception."[34] I respectfully disagree.

Like the Eastern District in *Harriott, supra,* "t]he Court is satisfied that Petitioners' counsel's "specialized knowledge of immigration law, and the limited availability of attorneys who would have taken this case at the statutory rate, are 'special factors' which justify [a reasonable] increase in the rate of pay.""[35] I find that in this case a rate of $250 per hour is reasonable.

Turning now to the number of hours expended on this matter, the

---

[33]*Id.* at 2-3.

[34]ECF No. 44 at 14.

[35]*Harriott v. Ashcroft*, 277 F. Supp. 2d 538, 546-7 (E.D. Pa. 2003) *citing Douglas v. Baker*, 809 F.Supp. 131, 135 (D.D.C.1992).

Government requests that the fee demand be reduced for line items related to administrative proceeding and those for clerical tasks.  Specifically, the Government requests that I strike 1.75 hours from the June 16, 2016 entry for preparing for a bond hearing before the immigration judge, and a total of 22.17 hours for "filing" ECF documents on the following dates: June 23, 2015; July 10, 2015; August 19, 2016; August 31, 2016; September 24, 2016; January 10, 2016; January 14, 2016; February 2, 2016; February 16, 2016; March 22, 2016; April 15, 2016; June 6, 2016; July 7, 2016; July 27, 2016; and August 8, 2016.

In response, Mr. Conklin argues three points.  First, he did not seek fees for a deportation proceeding, but only for the individualized bond hearing that I ordered the immigration judge to conduct [36]to streamline the instant habeas action. I agree.

Second, Mr. Conklin indicated that despite the fact that he described the work as "filing" documents, much of the time was actually spent preparing documents.  The clerical time to file the documents, according to Mr. Conklin, was one hour.  I will, accordingly,  reduce his time request by one hour.

Finally, Mr. Conklin requests an additional 5.3 hours for time that he spent preparing the traverse to the Government's opposing brief, which is a "fees on

---

[36]June 7, 2016 Order, ECF No. 29.

fees" request.  I will grant his additional 5.3 hours.

## II.  CONCLUSION

For the reasons set forth above, Petitioner's counsel is awarded $15,117.5 in

attorney's fees and costs pursuant to 28 U.S.C. § 2412(d)(1)(A).

BY THE COURT:


*/s Matthew W. Brann*
Matthew W. Brann
United States District Judge